in 19-1330 Boulder County Commissioners v. Suncor Energy are on the call. Mr. Shanmugam, can you hear me? Yes, I can. Mr. Hurd, can you hear me? Yes, I can. Thank you, counsel. Judges, counsel are prepared to argue. You may proceed. Thank you, Judge Lucero. Canon Shanmugam of Paul Weiss in Washington, D.C. for the appellants. May it please the court, although this appeal presents a number of legal issues, the core of our submission today is simple. State court law is not an appropriate vehicle and state courts are not an appropriate forum for regulating worldwide fossil fuel production and reshaping national and indeed global energy policy. Plaintiff's theory of the case is that defendants can be held liable for harms from their production and sale of fossil fuels, not only in the remedies for injuries resulting from greenhouse gas emissions associated with the use of those fossil fuels by billions of consumers, including by plaintiffs themselves. But the Supreme Court has made clear that such claims are governed by federal common law and those claims therefore arise under federal law for purposes of removal jurisdiction. The claims also implicate actions undertaken as a direction of federal officers and they necessitate the resolution of questions of federal law in an area of pervasive federal regulation. In short, this case belongs in federal court because it threatens to interfere with longstanding federal policies over matters of uniquely national importance. The district court erred by granting plaintiff's motion to remand and its order should therefore be vacated. I'm happy to pause now and take the court's questions. What's the scope of our review? This is Judge McHugh. Good morning, Judge McHugh. Plaintiff's contention here is that this court lacks the power to consider any of the grounds for removal except the federal officer ground. But our submission is that once this court can review the order, and there's no dispute that this court has jurisdiction at this point, it can review any issue encompassed in that order. Our argument here flows from the plain text of section 1447 D, which provides that the remand order, which is to say the whole order and not the particular grounds for the order, is reviewable on appeal. The Supreme Court's decision in Yamaha construing the materially identical text of section 1292 B, the interlocutory review provision, strongly supports that inclusion and so too does this court's decision in Coffey, which applies to... This is Judge McHugh again. Let me interrupt. The language of 1447 D is a little different than what was considered in Yamaha because it goes on to say an order remanding a case to the state court from which it was removed pursuant to section 1442 or 1443 of this title. Does that in your mind limit the scope of what's meant by an order? No, Judge McHugh. And that is because I think the statute really contemplates a two-step process. The first question is, was this case removed pursuant to section 1442 or 1443? And clearly here, there's no dispute that this case was removed pursuant to 1442 because one of the grounds for removal was the federal officer removal statute. At that point, the statute is reviewable by appeal. And in that respect, the language is identical to the language that was at issue in Yamaha and in this court's published opinion in Coffey because in both cases, the statute provides that the order is reviewable on appeal. And if Congress had intended plaintiff's meeting, Congress easily could have specifically said in so many words that the only ground for removal that is reviewable is the federal officer ground. And to the extent that other circuits have reached a different conclusion, most of those decisions either predate the Supreme Court's decision in Yamaha or do not address it at all. And as the court will be aware, we point the court in particular to the Seventh Circuit's decision in the Liu Junhong case, which I think contains the most extensive reasoning on this question of any of the decisions from sister circuits, and which has been followed by the Fifth Circuit and the Sixth Circuit in subsequent decisions. So our submission, I think, is a quite simple one, and that is that the text of the statute really dictates the outcome here. And the text of the statute in some sense goes further than even the other statutes we've been discussing in that the court's review here is mandatory and not discretionary in any way. And so this is obviously a critically important question for purposes of this appeal, because we believe that there are a number of other compelling grounds for removal above and beyond the federal officer removal ground. This is Judge Holmes, and I want to follow up on that too, because I'm struggling with that response, because it seems to me that in Yamaha, number one, there's limiting language for 1447D, but when it references 1442 and 1443, I don't see anything on the face of that statute that suggests this two-stage process that you're talking about. I mean, it speaks to an order of a specific kind, and that is different than Yamaha, and that's different than our Coffey case, which both speak generically about an order. Judge Holmes, there's only one order here. In other words, there's the one order that remands the case to state court and, of course, the opinion backing that order, which addresses all of the potential grounds for removal. And so, again, our submission is, you know, first of all, is this a case that is being remanded to a state court from which it was removed pursuant to Section 1442? The answer to that is yes, and at that point, you know, the language of the statute says that order shall be reviewable. And the other side makes a variety of policy arguments, I think, in an effort to rebut this argument flowing from the plain text, but I don't think that there's anything strange about the notion that Congress could well have believed that it was important to have plenary review of a remand order whenever either federal officer removal or civil rights removal was one of the asserted grounds for removal. After all, the case is over, at least in federal court, once it's remanded to the state court. There are no further ongoing proceedings in federal court, and Congress could well have concluded that as a matter of judicial efficiency, once the case is up on appeal, it makes sense for the appellate court to review all of the grounds for removal. Again, the court has... Could I interrupt you for a second? I don't understand. See, I don't get the efficiency argument. I mean, in lieu of Hans Hong, there was only one other issue. We have multiple issues here, and I mean, it doesn't seem to me it's efficient at all. And for us to be in a situation where we're reviewing beyond the one issue in question. So efficiency actually doesn't seem to me to help you at all. Judge Holmes, I think that this is a somewhat unusual case in that there are multiple other compelling grounds for removal. I don't think that we should be faulted for that fact. It flows from the fact that this is a very unusual effort to use state law to address an issue of federal concern. I think if you look out on the cases from other circuits, typically there are only one or two other grounds for removal. And of course, there is going to be appeal. There's going to be briefing and oral argument. And so while the court may have incrementally more work to do in an appeal like this, because it would have to proceed to address additional grounds, we think that that is, again, an incremental burden. And I don't mean to minimize it. It obviously means more work for the court, but it's one that we would respectfully submit as contemplated by the language of the statute as indicated. Thank you. And I assure you, I'm not trying to get out of work. That's not what we're talking about here. The question is whether this is appropriate or not. And to that point, though, how do you respond to the argument of opposing counsel regarding, in particular, talking about Yamaha, that there's a different interest at play? I mean, in Yamaha, we're talking about the timing of reaching issues. Here we're talking about revealing issues that otherwise would not be reviewable at all. And therefore, the notion that you could file some frivolous 1442 claim or have some frivolous 1442 basis and therefore allow in a bunch of other issues that otherwise would never be appealable. Yeah, I'll address that. And then I do want to turn to the merits because time is short. I think that Congress in this context didn't, from our perspective, Congress simply didn't impose any limitation on the grounds for review. And if anything, in this context, there was less concern than there would be in the context of Yamaha, where you have ongoing proceedings that could be interfered with. In other words, it would make more sense in the context of Yamaha or in the context of capital removal to limit the grounds for review precisely because proceedings are ongoing in the federal court and there could be review at the end of the proceedings. Here, by contrast, the proceedings in the federal court are at an end. I do, I realize that I've only got five and a half minutes left. Exactly. And I'm sensitive to that too, counsel. This is Judge Cicero. Are there any federal statutes or federal statutory schemes that you could direct us to that would indicate that the federal government is concerned about regulating more globally in this field, or which would appear to preempt state law in the field? So obviously, ordinary preemption is not at stake here. We do have our argument concerning complete preemption, but I would point this court both to the body of law governing emissions, and in particular, the Clean Air Act, which I think reflects federal policy and in particular- Well, let me interrupt you. This is Judge McHugh with respect to the Clean Air Act. I have a hard time accepting a complete preemption argument under the Clean Air Act when the statute specifically indicates that it doesn't displace state law. Well, the statute, Judge McHugh, does have a narrow savings clause, but that savings clause in and of itself does not preclude a statute from having complete preemptive effect. And here, plaintiffs by their concession have bypassed any available procedures under the Clean Air Act for regulating emissions precisely by filing this action in state court. But if you don't agree with me on that, I would simply make the point, circling back to Judge Lucero's question, that all of this is also relevant to the Grable analysis, because it goes to the federal issues that would be implicated by resolution of the state law claims. And there's another set of federal law, of course, all of the federal law in the foreign policy context, where the United States has stated its policy of resisting reductions in greenhouse gas emissions. And all of this also goes to the question of federal common law. And I want to say just a little bit about that in my presentation. It is quite clear in a series of decisions that federal common law applies to transboundary pollution suits. And plaintiff's claims squarely fall within that category for the simple reason that they are based on the interstate and international emissions of greenhouse gases over the course of decades. And whatever plaintiff's theory, and plaintiffs obviously have multiple causes of action here, it is quite clear from their complaint that all of their claims are based on those worldwide emissions. If you look at pages 73 to 77 of the appendix, the complaint goes on for pages about how the injury flows from those emissions. And where federal common law applies, it supplies the source of law. It is no different from a choice of law analysis where a plaintiff pleads Colorado on their complaint, but a court concludes that Mexico law applies instead. And so to the extent that plaintiff suggests that this is a preemption argument in disguise, that is incorrect. This goes to the threshold question of the source of law that governs their claims as the Supreme Court made clear in the Standard Oil case. And then finally, before I reserve... Counsel, you have tried to reserve time to make your actual arguments. And so I would, again, with the panel's consent, and this is an important case, would grant additional time for you to argue. I would prefer if my colleagues agree to have you finish your argument now, hear from the appellees, and then decide how much additional time to grant based upon the proceedings of the appellee. Great. Okay. All right. Thank you, Judge McHugh. Thank you, Judge Holmes. We'll proceed then to hear from the appellees, and then we'll come back to the appellant for additional time. Okay. Thank you very much. You're very welcome. Good morning, Your Honors. Ken, I just want to make sure you can hear me before I begin. I can hear you. Yes. Okay. Good morning, Your Honors. And may it please the Court. I'm Richard Lawrence Hurst for the appellees. And I'd like to start with the question of appellate jurisdiction. I think that the Court has already indicated that it understands most of the arguments I would make, but I would like to add just two for the most part. The first is that the majority rule in appeal of specific issues that Congress indicates is, first of all, based on text, starting from the initial part of the statute that says that remands are not reviewable. And so two circuits explicitly, the Davis case and the Jacks case, said that these are plain text arguments. And that's the result that's compelled by the plain text of the statute. And that's what Congress intended. When Congress in 2011 permitted review of federal officer jurisdiction, there was already the civil rights exception for non-reviewability. And there was a clear body of case law that had been established over the course of 40 years. So seven circuits unanimously held at that point that only the specific issue that Congress identified is reviewable, even when a number of issues were raised before the district court. Now, the parties agree on the interpretive approach to this. Both parties agree that when you have a prior relevant judicial interpretation, Congress is presumed to legislate against the backdrop. The difference is that they say that you should look to the interpretation of a different statute, 1292B, and look to Yamaha. And in our view, that doesn't make a lot of sense. We have an established body of law in this statute that Congress was on. This court should look to and presume that Congress adopted that body of law. And then the only other point I would make on this is that if you look at 1292 compared to 1447, 1292 specifically allows for bootstrapping. It says order that involves a controlling question law. And so what it means by that is that the order is broader than the controlling question, and you can appeal the entire order, including the question. There's nothing like that in 1447. So this is a very different statute. 1292 is a very different statute with very different text. And as the court's already pointed out, it has very different purposes. On my colleague's point about what this case is about, the district court said, and this is a quote, defendants mischaracterize plaintiff's claims. Plaintiffs do not challenge or seek to impose federal emissions regulations and do not seek to impose liability on emitters. This is a case about defendants' sales and campaign of misrepresentation of the dangers of fossil fuels over the course of decades. It's not about emissions. This case was only brought under state law. Under the well-pleaded complaint rule, they can't remove based on unpled federal claims. They don't speak- If you will, please, Judge Lucero, would you address the relief that you seek in state court, please? We're seeking damages for the harms that these local governments suffered in abating the impacts of climate change. Is that by way of the damages calculated in the nature of the sale? In other words, what is your nexus to sales in the relief that you seek? Well- If I understand your argument correctly, you're saying that you are not seeking a broad federal kind of remedy, that you're seeking instead a localized cause of action based upon sales. Or maybe I misunderstood what you argued. No, no. That's absolutely correct. We are only seeking localized damages that these plaintiffs have suffered. As the district court described, I think accurately, it's a pro-rata share of the cost of abating. It wouldn't necessarily cover all of the damages that the plaintiffs have suffered. This is Judge Holmes, but it does have a nexus to sales, doesn't it? Because in your complaint, there are references to level of sales, and that also has a connection to supposedly their misrepresentation campaign that was designed to continue to allow them to sell at high levels. And so there is a nexus to sales, right? Oh, yeah. I was not intending to suggest otherwise. What makes defendants liable is their unchecked sales of fossil fuels coupled with their decades-long campaign to misrepresent the dangers of fossil fuels. Those are the tortious acts here. But there's not an effort at an injunction, right? You're not seeking equitable relief to stop their sales. We are absolutely not seeking equitable relief to stop their sales. And the reason that they are characterizing this as an admissions case is because that's how they get to argue or try to argue that there's all these federal interests here. And the problem with that is, well, there's a number of problems with that. First of all, the federal government has interest in all sorts of cases that raise traditional common law theories that are heard in state court all the time, like cigarette cases and opioid cases. All these things are about sales and misrepresentations. And local governments have sued for local injuries in these areas, in state court, under state law, in many, many cases. And as Justice Gorsuch pointed out in the Virginia Uranium case, the mere fact that there's federal interest does not create federal preemptive law. Only Congress can do that. And so this sort of generic appeal to federal interest doesn't create federal jurisdiction. Now, if there's- Counsel, again, Judge Lucero, we have two plaintiffs here, well, several plaintiffs, but two of which are San Miguel County, which is at the extreme west end of the state, and Boulder County, which is not at the extreme eastern boundary of the state, but well to the east. I think that's right, Your Honor. Correct. The relief that you seek, and I'm interested in knowing how you segment or how any state court could segment the kind of relief that you seek here, unless it's based on a percentage of localized sales or something of that type, because otherwise, I mean, what's the population of San Miguel County, 7,000? I do not know that off the top of my head, Your Honor. It's around 7,000 or 8,000, as I recall, closely. We're not taking judicial notice of it, but it's a small county. You have Boulder, which on the other hand is quite large. And just a focus here on the type of relief that you seek, whether it is indeed localized or whether it is a broader federalized interest. So just to be clear, what makes defendants liable is their sales across their enterprise. The damages that plaintiffs suffer and seek compensation for are tied to the actual amount of money, of damages that they incur as a result of caused by the harms of climate alteration. Incurred... So the harms are localized. I'm sorry. Go ahead, Your Honor. I apologize. Incurred and will incur, right? I understood from the complaint the notion of they've caused this damage to us. We've had to these steps to address climate change because of the two wrongs that you identified, the unchecked sales and the misrepresentations. And we also need to have money in the bank, too, because we know that there are going to be future expenditures. Did I understand that correctly? That's correct, Your Honor. Okay. And if I might, on their federal common law argument, they have two serious problems with it. This is a preemption question. It's not a choice of law question. So in the Roulette case, the court specifically noted that when state law... I'm sorry, when federal common law applies, that's a matter of preemption. And in the Milwaukee 2 case, the Supreme Court said, if federal common law exists, it exists because state law cannot be used. That's preemption. And this court in Devin and the Caterpillar case specifically said the preemption defenses don't create jurisdiction. But even if you could get past that problem, the other problem is that they overstate the scope of federal common law. Established federal common law only applies when there is a state to refer an injunction against an emitter. And we have none of those things here. And those limits that I'm describing are exactly the same limits that Exxon described for the Ninth Circuit in its brief in the Kivalina case. So you don't have to take my word for it. So what they're really asking you to do is based on an unpledged federal common law claim to expand federal common law into reaches that are really sort of boundless. And our core argument is that that is Congress's responsibility. If Congress wants to preempt a case for sales and misrepresentation, which are ordinary common law claims, Congress can do it, but it has to be Congress. That's not the sort of thing that this court should undertake. Are there facts pled that tie the individual defendants to each of the individual plaintiffs' local governments? I'm sorry, Your Honor, I'm not sure. Well, for example, let's say there's a claim against Exxon, for example. Are there Exxon dealerships in Telluride? I'm not sure specifically if there are in Telluride. They have made a series of arguments like this under the guise of personal jurisdiction in state court. And I think that while I don't agree that they're right on the merits, I think that is the avenue to make those sorts of arguments. They're all fully briefed in the state court on Exxon's motion to dismiss and Suncor's separate motion to dismiss. And I think that the state court is perfectly capable of handling those issues. All right. Thank you. I'm sorry, Your Honor, I didn't hear. I said thank you. Oh. Does the court have any other questions on that issue? No. No. Okay. Well, I think then that our position is just that their core argument would radically expand both appellate jurisdiction and not just district court jurisdiction, but also the scope of federal common law. And for those reasons, we urge the court to affirm the district court's remand. It gave serious consideration. It was a thoughtful opinion, and we think it was right. And for those reasons, we urge the court to affirm. Thank you, counsel. All right. How about three minutes, Judge Holmes and Judge McHugh, on additional time to the appellant? Fine. Here. Counsel, I think you participated or heard that topologically, so you may proceed. Thank you, Judge Lucero. One word on the scope of review, and then I want to turn to federal common law. On the scope of review, I think it's telling that my friend, Mr. Hertz, focused on this argument concerning ratification. Of course, you only get to congressional intent if there's any ambiguity in the text of the statute, and we think that there is no such ambiguity. But if you get to ratification, we would submit that the relevant body of law is the Supreme Court's decision in Yamaha, and that when Congress expanded Section 1447D, that was the relevant law that Congress would have ratified. And to the extent that Mr. Hertz makes an argument concerning the text of Section 1292B, that argument cuts in our favor. He focuses on the fact that Section 1292B provides for review of an order involving a controlling question of law. But the whole point of the Supreme Court's decision in Yamaha was that a court of appeals could review not just the controlling question of law on which the district court granted certification, but any other issue fairly encompassed in the order. So too here. Counsel, Judge Lucero, what is your best case for the propositions that federal common law encompasses the types of claims, state type claims that are asserted by the plaintiffs in this case? So Judge Lucero, there is a whole body of law that federal common law applies to climate change related claims like those at issue here. The Supreme Court's decision in AEP, the Ninth Circuit's decision in Kivalina, and the decisions of the district courts in the California case and in the city of New York case. All of those cases focus on one basic principle, and that is regardless of the types of relief that plaintiffs seek and the types of claims that plaintiffs purport to pursue under state law, where the claims ultimately are based on this theory that the plaintiffs suffered injury from the emissions of greenhouse gases. And of course, we're talking about climate change, to which there are innumerable contributors from the use of fossil fuels, and of course, also innumerable producers of fossil fuels, that those claims necessarily fall into this category of transboundary pollution suits. And that is the paradigmatic area in which federal common law applies. And to the extent that Mr. Hertz makes a threshold argument, in addition to his argument that federal common law does not Supreme Court's decision in Standard Oil, to footnote seven of the city of Milwaukee two decision, and to the Swiss American case from the First Circuit, all of which support the proposition that this is not preemption in disguise. This is a question concerning the applicable source of law that governs the claims. Claims one to four in the complaint do not even specify the applicable source of law. And so like a question of choice of law between two states laws, we believe that this is a question that the court has to consider in evaluating its jurisdiction. I would just say one sentence on federal officer removal. We rest on our briefs on that ground for review, but that is ultimately something that the court could review regardless of its view on the appropriate scope of appellate review. And here we respectfully submit that Exxon Mobil satisfies all of the requirements for removal under that statute. We would ask that the remand order be vacated. Thank you, counsel. Case submitted. Counsel are excused.